**22-MJ-03934-DAMIAN**

Mod AO 442 (09/13) Arrest Warrant    AUSA Name & Telno: Sheb Swett - 212-637-6522

FILED BY ___MM___ D.C.
Nov 15, 2022
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

| United States of America | ) |
|---|---|
| v. | ) |
| Aldo Rabago Bautista | ) Case No. 22 Mag. |
|  | ) |
|  | ) |
|  | ) |
| *Defendant* | |

## ARREST WARRANT

To:   Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*   Aldo Rabago Bautista ,

who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment   ☐ Superseding Indictment   ☐ Information   ☐ Superseding Information   ☑ Complaint
☐ Probation Violation Petition   ☐ Supervised Release Violation Petition   ☐ Violation Notice   ☐ Order of the Court

This offense is briefly described as follows:

   Conspiracy to Commit Money Laundering - Title 18, United States Code, Section 1956

Date:   11/11/0202

*Issuing officer's signature*

City and state:   New York, New York         Hon. Sarah L. Cave, United States Magistrate Judge
                                                               *Printed name and title*

**Return**

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____ .

Date: _____

*Arresting officer's signature*

*Printed name and title*

Approved: _____
EMILY DEININGER / SHEB SWETT
Assistant United States Attorneys

Before:  THE HONORABLE SARAH L. CAVE
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - - - - - - X
                                        :   **SEALED COMPLAINT**
UNITED STATES OF AMERICA                :
                                        :   Violation of
         - v. -                         :   18 U.S.C. § 1956(h)
                                        :
ALDO RABAGO BAUTISTA,                   :   COUNTY OF OFFENSE:
                                        :   NEW YORK
                         Defendant.     :
- - - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

EDWARD MATEO, being duly sworn, deposes and says that he is a Special Agent with the United States Drug Enforcement Administration ("DEA"), and charges as follows:

### COUNT ONE
### (Conspiracy to Commit Money Laundering)

1. From at least in or about July 2020 through at least in or about November 2022, in the Southern District of New York and elsewhere, ALDO RABAGO BAUTISTA, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B).

2. It was a part and an object of the conspiracy that ALDO RABAGO BAUTISTA, the defendant, and others known and unknown, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, (i) felonious narcotics offenses, in violation of Title 21, United States Code; and (ii) offenses against a foreign nation involving the manufacture, importation, sale, or distribution of a controlled substance (as such term is defined for purposes of the Controlled Substances

Act), knowing that the transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity, and to avoid a transaction reporting requirement under State and Federal law, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and (ii).

(Title 18, United States Code, Section 1956(h).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3. I have been a DEA Special Agent for approximately four years. During that time, I have participated in numerous investigations of unlawful drug distribution as well as money laundering. During the course of those investigations, I have conducted or participated in surveillance, drug transactions with undercover officers and confidential informants, the introduction of undercover officers, the execution of search warrants, debriefings of witnesses, and reviews of taped conversations and drug records. Through my training, education, and experience, I have become familiar with the manner in which illegal drugs are imported and distributed; the way in which illegal drugs are prepared, packaged, and sold on the street; some of the methods of payment for such drugs; and some of the methods that are used to disguise the source and nature of the profits made by drug dealers.

4. This affidavit is based on that experience, my conversations with other law enforcement officials, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview

5. Based on my experience and training, and my participation in this investigation, I know that drug trafficking organizations ("DTOs") use the international trade and financial systems to transfer money obtained through the sale of narcotics in the United States across international borders and disguise the illicit origins of the proceeds. Specifically, after drugs are sold for dollars in the United States, a foreign DTO typically extends a "contract," which is an offer to purchase the narcotics proceeds, to a money laundering broker. Once the U.S. dollars are

delivered to the broker or agents of the broker, typically through a bulk cash pickup in the United States, the broker releases the agreed upon amount of currency in the narcotics trafficker's home country. The money laundering broker then introduces the narcotics proceeds into the U.S. banking system, including through corporate shell entities. The money laundering broker may then use the funds to purchase goods, either from the United States or other markets, that can be transported to the broker's home country and sold for value. Alternatively, the broker may sell the dollars to individuals outside of the United States who wish to move their wealth to the United States outside of the banking system. This network, which allows drug traffickers to collect narcotics proceeds in their home country without ever sending money in cross-border transactions from the United States, is known as the Black Market Peso Exchange ("BMPE").

6. Since in or about 2019, DEA has been investigating a group of individuals based primarily in Mexico who participate in the repatriation of drug cartel proceeds to Mexico and other countries through the BMPE. As set forth in greater detail below, the investigation has uncovered that ALDO RABAGO BAUTISTA, the defendant, is a money laundering broker based in Mexico City, Mexico. BAUTISTA helps drug cartels arrange to get money from the United States and other countries back to Mexico and other countries through the BMPE.

7. As set forth in greater detail below, between in or about July 2020 through at least in or about November 2022, ALDO RABAGO BAUTISTA, the defendant, facilitated the laundering of approximately $3.7 million of narcotics proceeds.

### BAUTISTA Conversations with CS-1

8. As part of the investigation, I and other DEA agents have debriefed a confidential source ("CS-1").[1] Based on my conversations with CS-1 and other law enforcement officers, my review of law enforcement reports regarding CS-1, my review of chat messages between CS-1 and others, my review of draft transcriptions between CS-1 and others, and my training and experience, I have learned the following, in substance and in part:

---

[1] CS-1 has been cooperating with law enforcement since early 2018. CS-1 has pled guilty to federal money laundering offenses and is cooperating in the hopes of receiving leniency at sentencing. Information CS-1 has provided has been corroborated in part by other evidence gathered, including bank records, toll records, and information provided by other confidential sources.

3

    a. Prior to cooperating with the Government, CS-1 worked with money launderers located across the world, including Mexico, Columbia, Hong Kong, Israel, and elsewhere. CS-1 would receive contracts to retrieve and transfer narcotics proceeds. CS-1 would also work on behalf of other money laundering brokers, helping them to retrieve narcotics proceeds in the United States and send those proceeds to U.S. bank accounts in the name of shell companies in exchange for a commission.

    b. CS-1 had historically participated in transactions involving a particular money laundering broker based in Mexico ("CC-1"). In or about July 2020, CS-1 reconnected with CC-1 and began conducting bulk cash pickups for CC-1 in the United States as part of CS-1's proactive assistance to the DEA.

    c. In or about November 2021, CC-1 instructed CS-1 to contact an individual, later identified as ALDO RABAGO BAUTISTA, the defendant, regarding some recent issues with the payouts of money laundering contracts in Mexico due to a shortage of U.S. dollars in Mexico, which was the currency that BAUTISTA and CC-1's "client" preferred. During that call, CC-1 explained to CS-1 that CC-1 worked for BAUTISTA as a middleman in providing money laundering contracts to CS-1.

    d. In or about late 2021, CS-1 met with BAUTISTA, whom CS-1 knew as "Aldo," CC-1, and another individual in Mexico City, Mexico, at the DEA's direction. During that meeting, which was audio-recorded and surveilled by DEA agents, BAUTISTA and CS-1 discussed the fact that their business involved moving drug proceeds including, the following:[2]

      i. CS-1 noted that "[the clients] send the 'falopa' over there, until they get paid for it, [and] it takes time," and expressed frustration that "when they have the money, they want to do it right away," but with "the ones who are selling it, they give them a month to sell it." BAUTISTA responded, "Yes, exactly." Based on my conversations with CS-1, I understand that "falopa" is a term used amongst money launderers to refer to narcotics.

      ii. BAUTISTA and CS-1 discussed issues that they had faced in the past when the couriers picking up the bulk cash in the United States had been stopped by law enforcement, or had

---

[2] CS-1 communicated with BAUTISTA in Spanish, and the summaries provided herein are based on translations of those conversations.

4

absconded with the money and then falsely claimed that they had been stopped by law enforcement.

        iii. BAUTISTA, CS-1, and CC-1 discussed the possibility of having CS-1 send money from the bulk cash pickups to Columbia instead of Mexico because that is where the "product" is being manufactured and distributed from. Based on my conversations with CS-1 and my training and experience, I understand that "product" refers to narcotics :

    CS-1: I can send, if your people want, I can send money to Columbia.

    CC-1: Directly over there?

    CS-1: Medellin, Cali, Bogota.

    BAUTISTA: No, these are not Columbians. I have the contact but-

    CS-1: Yes, but they do buy product from over there. If they need to pay over there, you facilitate it a bit.

    CC-1: But the Columbians nowadays have streamlined, they want everything in USDT.[3]

    BAUTISTA: Exactly. That's already-

    CS-1: Alright that-

    CC-1: And that's how they give it to everybody.

    BAUTISTA: They don't touch the money anymore.

9. Based on my participation in this investigation and my conversations with other law enforcement officers, I know that a DEA agent conducting physical surveillance of the meeting between CS-1 and ALDO RABAGO BAUTISTA, the defendant, in Mexico City, Mexico, in or about late 2021, recognized the individual that CS-1 knew as "Aldo" as the same person pictured in a photograph that was obtained from a United States visa application submitted by BAUTISTA.

---

[3] Based on my training, experience, and participation in this investigation, I know that USDT refers to Tether, a cryptocurrency.

Money Laundering Transactions

10. Based on my participation in this investigation; my conversations with others, including law enforcement officers and CS-1; and my review of communications, including WhatsApp chats and recorded conversations, between CS-1 and ALDO RABAGO BAUTISTA, the defendant, I have learned the following, in substance and in part:

   a.  Between in or about July 2020 and in or about November 2022, ALDO RABAGO BAUTISTA, the defendant, was involved in approximately 36 money laundering contracts for bulk cash pickups in the United States that were given to CS-1, for a total of approximately $3.7 million. During that period, CS-1 communicated with BAUTISTA extensively, primarily through WhatsApp chats and calls,[4] to arrange bulk cash pickups and for BAUTISTA to provide CS-1 with instructions on what bank account the funds should subsequently be sent to once the bulk cash pickup was complete.

   b.  For example, in or about February 2020, another money laundering broker ("CC-2") passed a money-laundering contract to CS-1 for approximately $150,000 in New York City, as follows:

      i.  On or about February 21, 2022, CC-2 offered CS-1 a contract to pick up approximately $500,000 in bulk United States currency located in the New York area. At the DEA's direction, CS-1 accepted the contract and asked CC-2 to break it into smaller amounts, to which CC-2 agreed.

      ii.  On or about February 23, 2022, another individual ("CC-3") contacted CS-1 to arrange the date, time, and location for the pickup of approximately $150,000. At the direction of the DEA, CS-1 instructed CC-3 that the pickup would occur the next day in Brooklyn, New York.

      iii.  On February 24, 2022, a DEA confidential source ("CS-2") met an unknown male ("UM-1") at the designated location in Brooklyn, New York. UM-1 was driving a vehicle (the "Dropoff Car") that was registered to an address in the Bronx, New York. UM-1 gave CS-2 a yellow shopping bag that was later

---

[4] CS-1 has provided copies of those WhatsApp chats to the DEA and provided summaries of the calls to the DEA shortly after they occurred.

6

determined to contain approximately $150,000 in United States currency.

   iv. Law enforcement agents conducting continued physical surveillance of UM-1 followed UM-1, who was driving the Dropoff Car, to the Bronx, New York, where UM-1 was observed driving in circles around several city blocks in a manner that, based on my training, experience, and participation in this investigation, I believe was consistent with an attempt to evade surveillance by law enforcement. UM-1 then parked the Dropoff Car on the street in the Bronx, New York, approximately one mile from the address to which the Pickup Car was registered.

   v. After the pickup occurred, CS-1 contacted another money laundering broker ("CC-4"), who works with BAUTISTA, to inform CC-4 that the transaction was complete.

   vi. The next day, CS-1 received instructions from BAUTISTA and CC-4 to split the money and wire transfer it into five different accounts. The information for two of those accounts was provided by BAUTISTA, while the information regarding the other three accounts was provided by CC-4.

   c. On multiple occasions, ALDO RABAGO BAUTISTA, the defendant, was involved in money laundering transactions that subsequently led to the seizure of narcotics. For example, in or about December 2021, BAUTISTA participated in two money-laundering transactions with CS-1 for a total of approximately $250,000, in Salt Lake City, Utah, that resulted in the seizure of narcotics and firearms, as follows:

   i. On or about December 8, 2021, BAUTISTA offered CS-1 a contract to pick up approximately $100,000 in Salt Lake City, Utah.

   ii. On that same day, an unknown male ("CC-5") contacted CS-1 to arrange the date, time, and location for the pickup. The following day, CS-1 and CC-5 agreed that the pickup would occur on December 13, 2021 at a location in the Salt Lake City, Utah, area. The pickup was subsequently postponed to December 14, 2021.

   iii. On or about December 14, 2021, a DEA confidential source ("CS-3") met with an individual from whom CS-3 had previously received bulk cash ("CC-6") at the agreed upon location. During that meeting, CC-6 gave CS-3 a bag containing multiple bundles of U.S. currency held together with rubber bands, which were later determined to contain, in total, approximately

$100,000. Law enforcements agents conducting physical surveillance then followed CC-6 to a residence located in West Jordan, Utah (the "CC-6 Residence").

   iv. After the pickup concluded, CS-1 informed CC-4 that the transaction was complete, and was instructed that the money should be wired to three separate accounts. CS-1 informed BAUTISTA and CC-4 once those wire transfers were complete.

   v. On or about January 5, 2022, BAUTISTA offered CS-1 another contracted to pick up approximately $150,000 in bulk U.S. currency located in Salt Lake City, Utah.

   vi. That next day, CC-5 contacted CS-1 to arrange the date, time, and location for the pickup. CS-1 instructed CC-5 to meet CS-1's courier on January 12, 2022 at a location in the Salt Lake City, Utah area.

   vii. On or about January 12, 2022, CS-3 met CC-6 at the agreed upon location. During that meeting, CC-6 gave CS-3 a brown bag containing multiple bundles of U.S. currency held together with rubber bands, which were later determined to contain, in total, approximately $150,000.

   viii. On or about February 21, 2022, law enforcement agents executed a judicially authorized search warrant of the CC-6 Residence. During the execution of that search warrant, law enforcement recovered approximately 626 grams of white powder, some of it in brick form, a sample of which field tested positive for cocaine; approximately 312 grams of marijuana; approximately 84 grams of suspected THC extract; approximately 63.5 grams of THC-laced gummies; one rifle, one handgun, and ammunition. DEA agents subsequently arrested CC-6.[5]

  WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of ALDO RABAGO BAUTISTA, the

---

[5] In or about May 2022, CC-6 pled guilty to a federal charge of possession of cocaine with intent to distribute.

defendant, and that he be arrested and imprisoned or bailed, as the case may be.

/s Edward Mateo (by Court with Authorization)
_____
EDWARD MATEO
Special Agent
Drug Enforcement Administration

Sworn to before me this 11th day of November, 2022 by reliable electronic means pursuant to Fed. R. Cr. P. 4.1 & 41(d)(3).

_____
THE HONORABLE SARAH L. CAVE
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK